IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TAMMY W. VANDELINDE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:20-cv-00330 |
| ) | |
| PRIORITY AUTOMOTIVE ROANOKE, ) | By: Elizabeth K. Dillon |
| INC. ) | United States District Judge |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

In this employment discrimination suit, Vandelinde brings age and sex discrimination claims aginainst Priority Automotive Roanoke, Inc. Pending before the court are Priority's motion to dismiss and compel arbitration (Dkt. No. 11), Vandelinde's motion to enlarge time to respond and to compel discovery, or in the alternative, to strike exhibits (Dkt. No. 16), and Priority's motion for leave to file a surreply (Dkt. No. 27). For the reasons stated below the court will grant Vandelinde's motion to enlarge time to respond and to compel discovery and grant Priority's motion for leave to file a surreply. The court will reserve ruling on the motion to dismiss pending development and/or resolution of the contract formation issue through limited discovery.

I.  BACKGROUND

**A. Factual Background**

Plaintiff Tammy Vandelinde is a former employee of defendant Priority Automotive d/b/a Priority Honda Roanoke ( "Priority"). (Compl. 1, Dkt. No. 1.) Priority, formerly known as

1

Woodson Honda, is a car dealership operating in Roanoke, Virginia. (*Id.* at 3.)

In 2017, Sally Woodson, then owner of Woodson Honda, hired Vandelinde as a floor manager. (*Id.*) Sally Woodson later promoted Vandelinde to the role of general manager and finance manager. (*Id.*)

In February 2019, Priority purchased Woodson Honda from Sally Woodson and made Eric Hall general manager of the dealership. (*Id.*) Vandelinde states that after Hall became general manager, her work environment dramatically shifted. (*Id.*)

Vandelinde claims that she was treated differently than her male colleagues, Harry Speace and Tom Campbell, who also worked as finance managers for Priority. (*Id.* at 3.) According to Vandelinde, Hall required her to report to work at 8:30 am each day, while Hall allowed Speace and Campbell to report to work at 9:00 am. (*Id.* at 4.) Vandelinde states that she was not permitted to park close to the dealership building, while Cambell was permitted to park close to the building. (*Id.*) Vandelinde also states that "Hall ensured that the male Finance Managers were given the car sale deals that netted a higher commission and bonus . . . and shifted more of the cash deals that did not require financing to Ms. Vandelinde." (*Id.*)

In addition, Vandelinde states that Hall demoted female employees and replaced them with younger male employees. (*Id.* at 5.) Vandelinde cites Julie Felix, who was demoted from the role of sales manager to internet manager under Hall's managagement. (*Id.* at 4.)

On or about May 2, 2019, Priority terminated Vandelinde's employment. (*Id.* at 5.) Vandelinde was replaced by a younger male employee in his thirties. (*Id.*) Shortly thereafter, Priority also terminated Campbell's employment. Campbell was also replaced by a younger male

employee in his thirties. (*Id.*)

Priority states that it terminated Vandelinde for poor work performance. (Def.'s Br. at 5, Dkt. No. 12.) Vandelinde contends that her termination was based on age and sex discrimination. (Compl.) Vandelinde was 55 years-old at the time she filed this lawsuit. (*Id.* at 2.) In addition, she was the only female finance manager employed by Priority during her employment with the dealership. (*Id.* at 4.)

Following Vandelinde's termination, only two female managers remained employed by Priority: Julie Fox and Amber Quill. (*Id.* at 5.) Neither Fox nor Quill has an office at the dealorship, but all male managers have an office. (*Id.*) According to Vandelinde, Hall instructed Quill not to disagree with male employees, but male employees were permitted to disagree with Quill. (*Id.* at 6.) In addition, Quill "was spoken to about her clothing when she was dressed similar to male employees." (*Id.*) Priority later terminated Quill's employment. (*Id.*) Since Hall started as general manager, Priority has lost by resignation or termination nearly all employees that worked at the dealership when it operated as Woodson Honda. (*Id.*)

**B. Procedural Background**

On June 11, 2020, Vandelinde filed suit against Priority bringing the following claims: (1) sexual harassment/hostile work environment in violation of Title VII of the Civil Rights Act of 1964; (2) sex discrimination in violation of Title VII of the Civil Rights Act of 1964; (3) age discrimination in violation of the Age Discrimination in Employment Act; and (4) intersectional discrimination based upon age and sex. (Compl.) Vandelinde seeks injunctive relief, compensatory and punitive damages, and attorney's fees. (*Id.* at 7-9.)

3

Priority filed a motion to dismiss and compel arbitration. (Def.'s Mot. to Dismiss, Dkt. No. 11.) Priority argues that Vandelinde reviewed and executed a binding arbitration agreement as part of her employee on-boarding package. (Def.'s Br. 2; Dkt. No. 12.) Pursuant to this agreement, Vandelinde "agreed to arbitrate any and all disputes, claims, or controversies against the Company that could be brought in a court including, but not limited to, all claims arising out of her employment, the cessation of employment or any other dispute." (*Id.*) As a result of this arbitration agreement, Priority argues that this court is an improper venue. (*Id.* at 6.)

In response, Vandelinde filed a motion to enlarge time to response to the motion to dismiss and compel discovery, or in the alternative, strike the exhibits attached to defendant's motion to dismiss. (Pl.'s Response, Dkt. No. 16.) Vandelinde argues that the first time she received a copy of the arbitration agreement was with Priority's motion to dismiss and she has no memory of signing the agreement. (*Id.* at 1.) Vandelinde also argues that she is entitled to discovery on the issue of contract formation before responding to the motion to dismiss. (*Id.* at 6.) Moreover, Vandelinde argues that even if she did sign the agreement, it was illusory and unconscionable. (*Id.* at 9-10.)

In reply, Priority argues that it has submitted conclusive evidence of an arbitration agreement, which Vandelinde has failed to genuinely dispute (Def.'s Reply, Dkt. No. 18 at 5.) Moreover, Priority argues that the arbitration agreement was neither illusory nor uncionsционable. (*Id.* at 15.)

During the hearing on these motions, Vandelinde challenged the authenticity of her signature on the arbitration agreement. Priority later filed a motion to stay proceedings pending

4

resolultion of its motion to dismiss and compel arbitration. (Dkt. No. 20.) Vandelinde opposed this stay. (Dkt. No. 23.) The parties, however, reached a mutual resolution on the motion to stay and entered an order to that effect. (Dkt. No. 24.) Pursuant to that order, the parties agreed to limit discovery pending the resolution of Vandelinde's motion to compel discovery, or in the alternative, strike exhibits. (*Id.* at 2.)

On January 28, 2021, Priority filed a motion for leave to file a surreply in support of their motion to dismiss. (Dkt. Nos. 27, 28.) Priority states that it has produced evidence that Vandelinde's signature on the arbitration agreement was not forged. (Dkt. No. 28 at 1.) Specifically, Priority provides an affidavit from an employee who witnessed Vandelinde's signature of the arbitration agreement and a native pdf file showing that the signature page of the scanned arbitration agreement has never been altered. (Dkt. No. 28-1 at 1.) Vandelinde filed a response objecting to the surreply. (Dkt. No. 29 at 1.) Vandelinde dispute's Priority's employee-witness affidavit and states that the inconsistency in the signatures on the arbitration agreement are evidence of its inauthenticity. (Dkt. No. 29 at 3-4.) Priority then filed a reply in support of its motion for leave to file surreply. (Dkt. Nos. 31.)

Pending before the court are: (1) Priotity's motion to dismiss and compel arbitration; (2) Vandelinde's motion to enlarge time to reply and compel discovery, or in the alternative, strike exhibits; and (3) Priority's motion for leave to file a surreply.

II.  DISCUSSION

A. The Arbitration Agreement

The arbitration agreement at issue in this case states:

> The Arbitration Agreement is a legal document which, among other things, binds you to arbitrate all disputes you may have now or in the future with the Company, which otherwise could have been brought in court. You acknowledge you have been provided with a copy of the Arbitration Agreement. You have had sufficient time to read and understand the terms of this Agreement.
>
> You have a right to seek legal counsel regarding the meaning and effect of the Arbitration Agreement, and through this receipt, have been told by the Company to seek such counsel.
>
> BY SIGNING BELOW, You now knowingly, voluntarily and freely agree to accept and be bound by the Arbitration Agreement. (Dkt. No. 12 at 3.)

Regarding its scope, the arbitration agreement states:

> This Agreement to arbitrate includes, but is not linited to, claims under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964; the Fair Labor Standards Act; the Family Medical Leave Act; the Americans with Disabilities Act of 1990; Section 1981 through 1988 of Title 42 of the United States Code; any state or local anti-discrimination laws; or any other federal, state, or local law, ordinance or regulation, or based on any public policy, contract, tort, or common law or any claim for costs, fees, or other expenses or relief, including attorney's fees. (*Id.*)

Here, the parties do not dispute the content of the arbitration agreement, or that it is applicable to Vandelinde's claims if valid. Instead, Vandelinde disputes the authenticity of her signature on the agreement.

**B. Authenticity of the Signature**

"When parties have entered into a valid and enforceable agreement to arbitrate their disputes and the dispute at issue falls within the scope of that agreement, the F[ederal] A[rbitration] A[ct] requires federal courts to stay judicial proceedings . . . and compel arbitration in accordance with the agreement's terms." *Davis v. Lendmark Fin. Servs., LLC*, No. 7:15-CV-000131, 2016 WL 1060340, at *2 (W.D. Va. Mar. 11, 2016) (citing *Murray v. United Food & Commercial Workers*

*Int'l Union*, 289 F.3d 297, 301 (4th Cir. 2002) (citing 9 U.S.C. §§ 3-4 (2012))). "It is clear that 'even though arbitration has a favored place, there must still be an underlying agreement between the parties to arbitrate.'" *Id.* (citing *Atkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002) (quoting *Arrants v. Buck*, 130 F.3d 636, 640 (4th Cir. 1997))). "The question of whether a party agreed to arbitrate requires application of 'ordinary state law principles governing the formation of contracts.'" *Id.* (quoting *Chorley Enters. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 939, 944 (1995)).

"Under Virginia law, an agreement to arbitrate 'must contain the essential elements of a valid contract at common law.'" *Davis*, No. 7:15-CV-000131, 2016 WL 1060340, at *3 (quoting *Mission Residential, LLC v. Triple Net Properties*, LLC, 275 Va. 157, 160-61 (2008)). "It is elementary that mutuality of assent—the meeting of the minds of the parties—is an essential element of all contracts." *Id.* (quoting *Lacey v. Cardwell*, 216 Va. 212, 223 (1975)). "Until the parties have a distinct intention common to both and without doubt or difference, there is a lack of mutual assent and, therefore, no contract." *Id.* (citing *Persinger & Co. v. Larrowe*, 252 Va. 404, 408 (1996)). "A court must 'ascertain whether a party assented to the terms of a contract from that party's words or acts, not from his or her unexpressed state of mind.'" *Phillips v. Mazvck*, 273 Va. 630, 636 (2007)).

The Federal Arbitration Act "provides that if the parties dispute the making of an arbitration agreement, 'the court shall proceed summarily to the trial thereof.'" *Id.* (quoting 9 U.S.C. § 4 (2012). However, the right to a jury trial under the FAA is not automatic. *Id.* "[T]he party seeking a jury trial must make an unequivocal denial that an arbitration agreement exists—and must

7

also show sufficient facts in support." *Id.* (citing *Chorley Enters.*, 807 F.3d at 564 (citing *Oppenheimer & Co. Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995)); *see also Green v. Zachry Indus., Inc.*, 36 F. Supp. 3d 669, 673 (W.D. Va. 2014) ("[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; instead, the party must identify specific evidence demonstrating a material factual dispute." (citations omitted)). "This standard of review is 'akin to the burden on summary judgment.'" *Id.* "Accordingly, 'the party requesting a jury trial . . . must provide sufficient evidence in support of its claims such that a reasonable jury could return a favorable verdict under applicable law.'" *Id.* (quoting *Chorley Enters.*, 807 F.3d at 564.

Here, Vandelinde "has called into question the authenticity of her purported signature on the arbitration agreement at issue, as she does not recall reviewing or signing it during her employment." (Dkt. No. 16 at 8-9.) Vandelinde alleges that the signature on the arbitration agreement is inauthentic because Priority did not produce a copy of the original signed document. (Dkt. No 16 at 4.) Vandelinde claims that the signature on the electronic version of the document may have been created by a "cut-and-paste method from another document signed by Ms. Vandelinde." (*Id.*) Vandelinde further argues that "if an original existed, to determine whether it would be necessary to retain a handwriting expert to examine the document to ensure that the signature was not forged." (*Id.*)

It appears that Priority has not produced the original signed aribtration agreement. However, Priority has produced evidence that Vandelinde's signature on the agreement is authentic. Priority has debunked Vandelinde's cut-and-paste theory by showing, through metadata, that the

scanned arbitration agreement was never altered. (Dkt. No. 28-1 at 3.) Moreover, Priority has proffered to the court that the scanned copy of the arbitration agreement truly and accurately represents the original. (*Id.*) Finally, Priority has provided an affidavit from Trish Harrison, a human resources employee who states that she "watched Vandelinde, sign, by hand, the original arbitration scknowledgement contained in the on-boarding package . . . ." (*Id.* at 9.)

Nevertheless, Vandelinde maintains that her signature on the arbitration agreement is forged. (Dkt. No. 29.) Vandelinde claims that highlighting which appears below Vandelinde's signature on other on-boarding documents, but not below her signature on the arbitration agreement suggests that the document is inauthentic. (*Id.* at 3.) Vandelinde further argues that "the lines [in her signature] look quite different than the rest of the lines, as the lines are blurry and appear to have sections that are twice as thick." (*Id.*) Finally, Vandelinde notes that Harrison is not the witness listed on the on-boarding documents, rather it is Samantha Goods. (*Id.* at 4.)

Although Priority has provided significant evidence that Vandelinde's signature is authentic, there remains a dispute among the parties as to the authenticity of Vandelinde's signature on the arbitration agreement. The court will grant Vandelinde's motion to allow the parties to conduct discovery on the narrow issue of the authenticity of Vandelinde's signature on the arbitration agreement and to enlarge time for Vandelinde to respond to Priority's motion to dismiss. However, the court notes that the parties may not proceed to trial on the signature issue, as Vandelinde requests, unless Vandelinde presents specific evidence that the signature was forged. Merely discrediting Priority's evidence that the signature is valid, without any evidence of a forgery, will be insufficient.

C.  **The Arbitration Agreement is Neither Illusory Nor Unconscionable**

In addition to alleging that her signature is forged, Vandelinde also claims that the arbitration agreement is illusory and unconscionable.  Vandelinde argues that the agreement is illusory because Priority withheld the arbitration agreement upon initially learning of Vandelinde's claims and did not initiate arbitration.  (Dkt. No. 16 at 9-10.)  Vandelinde claims the agreement is unconscionable because it does not provide for discovery and requires Vandelinde to pay part of the arbitrator's fee.  (*Id.* at 10.)

"A mutual promise to arbitrate constitutes sufficient consideration for this arbitration agreement."  *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 275 (4th Cir. 1997) (citing *Rickborn v. Liberty Life Insurance Co.*, 321 S.C. 291 (1996)).  However, "courts have refused to enforce arbitration agreements where the agreement specifically allows the employer to ignore the results of arbitration."  (citing *Hull v. Norcom, Inc.*, 750 F.2d 1547, 1549 (11th Cir. 1985)).  Such an agreement would be illusory.

Here, if Vandelinde's signature is authentic and the arbitration agreement is binding, then it is supported by sufficient consideration.  The agreement includes a mutual promise to arbitrate and does not allow either party to refuse to enforce the arbitration agreement.  Therefore, the arbitration agreement is not illusory.

"When an agreement to arbitrate imposes high costs that might deter a litigant from pursuing a claim, a trial court may consider those costs in assessing whether the agreement is substantively unconscionable."  *Bird v. Turner*, 2015 U.S. Dist. LEXIS 16057, at *13 (N.D.W. Va. Sep. 1, 2015).  "[A] fee splitting [arrangement] can render an arbitration agreement unenforceable where the

arbitration fees and costs are so prohibitive as to effectively deny the employee access to the arbitral forum." *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 554 (4th Cir. 2001) (citing *Green Tree Financial Corp.–Alabama v. Randolph*, 121 S.Ct. 513, 522 (2000)). Some courts have "framed [the] analysis in terms of the complaining party's actual inability to afford the arbitration costs and fees." *Id.* In *Bradford*, for example, the Fourth Circuit held that an arbitration agreement was not unconscionable when the claimant had to pay $4,470 in arbitration fees and earned $115,000 in base salary. *Id.* at 558.

Here, Vandelinde states that prior to her termination from Priority, she earned approximately $160,000 per year. (Dkt. No. 16-2.) Therefore, the costs of arbitration should not be so prohibitively high as to bar Vandelinde from bringing her claim and she should be able to afford arbitration. As such, the costs of arbitration do not make the agreement unconscionable.

In addition, Vandelinde's argument that the arbitration agreement is unconscionable because the arbitrator's rules may prevent her from presenting evidence is premature. The arbitration rules provide that "No discovery shall be required except by the agreement of the Parties or by authority of governing law." (Dkt. No. 16 at 11.) This does not indicate that discovery is prohibited or likely to be barred. For these reasons, the arbitration agreement is neither illusory nor unconscionable.

**D. Surreply**

"The standard for granting a leave to file a surreply is whether the party making the motion would be unable to contest matters presented to the court for the first time in the opposing party's reply." *United States v. Sum of $70,990,605*, 991 F. Supp. 2d 144, 153 (D.D.C. 2013) (quoting

*Lewis v. Rumsfeld,* 154 F.Supp.2d 56, 61 (D.D.C. 2001)). "Generally, courts allow a party to file a sur-reply only when fairness dictates based on new arguments raised in the previous reply." *Warren v. United States Parole Comm'n*, No. 1:18CV601 (LMB/MSN), 2018 WL 5848977, at *4 (E.D. Va. Nov. 8, 2018) (citing *United States v. Falice,* No. 1:04CV878, 2006 WL 2488391, at *7 (M.D.N.C. Aug. 25, 2006); *Khoury v. Meserve*, 268 F.Supp.2d 600, 605-06 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004)).

Here, Priority seeks to use a surreply to address Vandelinde's claim that her signature was forged. Although Vandelinde raised this issue in her motion to enlarge time and compel discovery, Priority appeared to understand Vandelinde's challenge as one to the originality of the arbitration agreement, not it's authenticity.  (Dkt. No. 18 at 3-4.)  Therefore, Priority's response primarily addressed the argument that the arbitration agreement was not an original document.  (*Id.*)  At the hearing on these motions, Vandelinde made clear that she was not merely challenging the originality of the arbitration agreement, but also alleging that her signature on the agreement was forged.  Therefore, the court finds it appropriate to grant Priority leave to file a surreply to address the forgery allegations.

### III.  CONCLUSION

For the reasons stated herein, the court will grant Vandelinde's motion to englarge time to respond and compel discovery (Dkt. No. 16) to allow the parties to conduct discovery on the narrow issue of the authenticity of Vandelinde's signature on the arbitration agreement and to allow Vandelinde addition time to respond to the motion to dismiss.  The court will also grant Priority's motion for leave to file a surreply (Dkt. No. 27).  The court will reserve its decision on Priority's

motion to dismiss (Dkt. No. 11) pending the development and/or resolution of the issue of contract formation.

    Entered: March 23, 2021.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge